PEOPLE v GRANT

Docket No. 103165. Argued March 4, 1997 (Calendar No. 3). Decided July 15, 1997. Rehearing denied 456 Mich 1201.

Dennis J. Grant pleaded guilty in the Kent Circuit Court, George S. Buth, J., of conspiring to utter and publish and of being an habitual offender, second offense, and agreed that restitution would be set by the court. The Court of Appeals, MICHAEL J. KELLY, P.J., and T. G. KAVANAGH and S. T. DAVIS, JJ., vacated the order of restitution, and remanded the case for reconsideration, finding that the trial court failed to expressly consider the statutorily enumerated factors in MCL 780.767; MSA 28.1287(767), specifically, the defendant's financial resources and earning ability, the financial needs of his family, or other relevant factors, such as his assertion that he played a limited role in the offense (Docket No. 170992). The people appeal.

In a unanimous opinion by Justice BOYLE, the Supreme Court held:

The trial court did not err in failing to hold a separate hearing or make an express determination regarding the defendant's ability to pay under the Crime Victim's Rights Act. In reaching its decision, the trial court implicitly considered both the amount of restitution owed and the defendant's ability to pay within the statutory requirements.

1. Restitution for crime victims in Michigan is afforded not only by statute, but also by Const 1963, art 1, § 24. The compensatory nature of restitution is specifically designed to allow crime victims to recoup losses suffered as a result of criminal conduct. When restitution is ordered by the court either at the judge's discretion or as part of a plea agreement under MCL 780.767(1); MSA 28.1287(767), the statute requires two separate inquiries: a determination of the amount of the victim's loss and an evaluation of the factors that would affect the defendant's ability to pay restitution. A judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information. In this case, the voluntary nature of the plea and the express terms of the plea agreement evidence that the defendant was fully aware and accepted his obligation to pay whatever amount the court determined was

appropriate restitution for the losses sustained by the victims. The defendant did not present any information contrary to the amount of restitution imposed or offer support for any other figure. Because he agreed to make restitution and did not contest the amount of loss, he did not effectively challenge the accuracy of the statement regarding the amount of the loss to the victims that was provided in the presentence report. Absent a dispute, the court was not required to make express findings regarding the amount of restitution. The judge properly relied on the information in the presentence report in determining the amount of restitution.

2. The Crime Victim's Rights Act provides restitution to any victim of the defendant's course of conduct that gives rise to the conviction. The crime of conspiracy involves a defendant's course of conduct and is based upon an unlawful agreement between conspirators. A conspirator need not participate in all the objects of the conspiracy, but in general is held criminally responsible for the acts of other conspirators committed in furtherance of the common design. The defendant pleaded guilty of conspiracy and accepted restitution set by the court, which he received in exchange for limiting his sentence exposure from a life (habitual offender, fourth) to a five-year minimum. By entering into the plea agreement, defendant acknowledged that he could make restitution. The statute places the responsibility on the defendant in the case of a dispute in respect to the proper amount or type of restitution, to demonstrate his financial resources, needs, and the needs of his dependents in order to rebut the presumption created by the defendant's agreement to pay restitution. The trial court found nothing to overcome the presumption created by defendant's plea agreement. The language of the statute does not require the trial judge to make a separate factual inquiry and individual findings on the record. When determining restitution, whether it is included in the plea agreement or is statutorily imposed at the discretion of the trial court, the statute requires the court to consider enumerated factors in light of all the information available at the time of the sentencing hearing and then impose sentence. Only an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence. Inclusion of restitution in the plea agreement establishes a strong presumption that the defendant has or will have the financial ability to pay restitution.

Reversed.

210 Mich App 467; 534 NW2d 149 (1995) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *T. Lynn Hopkins*, Assistant Prosecuting Attorney, for the people.

*Thomas, DeGrood, Witenoff & Hoffman, P.C.* (by *Brian R. Sullivan*), for the defendant-appellee.

Amicus Curiae:

*Michael Thomas*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

BOYLE, J. In the present case, the issue is whether the trial court's failure to make express findings with respect to the statutory factors regarding restitution set forth in § 17, MCL 780.767(1), (4); MSA 28.1287(767)(1), (4)[1] was error that invalidates that

---

[1] Section 17, MCL 780.767(1), (4); MSA 28.1287(767)(1), (4) in existence at the time this defendant was sentenced provided:

(1) The court, in determining whether to order restitution under section 16 and the amount of that restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources and earning ability of the defendant, the financial needs of the defendant and the defendant's dependents, and such other factors as the court considers appropriate.

\*     \*     \*

(4) Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the earning ability of the defendant and the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and the defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as

portion of the judgment directing restitution. The defendant pleaded guilty of conspiring to utter and publish[2] and of being an habitual offender,[3] second offense, in exchange for an agreement to dismiss three counts of uttering and publishing and an habitual offender, fourth offense. The sentencing agreement also included a five-year maximum-minimum prison sentence and restitution to be "set by the Court." The trial court ordered restitution for $175,000.

The Court of Appeals vacated the portion of the judgment order of restitution for $175,000, and remanded for reconsideration. The appellate court found that the trial court erred because it failed to expressly consider the statutorily enumerated factors listed in § 17, specifically, the financial resources and earning ability of the defendant, the financial needs of the defendant and his family, or other relevant factors, such as defendant's assertion that he played a limited role in the offense. 210 Mich App 467, 471; 534 NW2d 149 (1995).[4]

---

the court deems appropriate shall be upon the party designated by the court as justice requires.

[2] MCL 750.249; MSA 28.446; MCL 750.157a; MSA 28.354(1).

[3] MCL 769.10; MSA 28.1082.

[4] In *Grant, supra* at 472, the Court of Appeals reasoned that its holding in *People v Music*, 157 Mich App 375; 403 NW2d 143 (1987), aff'd 428 Mich 356; 408 NW2d 795 (1987), should be limited to the provisions of the probation statute, MCL 771.3 *et seq.*; MSA 28.1133 *et seq.* In *Music*, we affirmed the appellate court's holding that the probation statute does not "expressly state" that a trial court is required to " 'hold a hearing or make findings on the record' " to determine whether a defendant has the ability to pay costs or restitution " 'at the time costs or restitution are imposed.' " The probation statute makes a distinction between *"imposition* and *payment"* of restitution and costs with regard to the enforcement of an order of restitution. A probationer may not be punished if he is unable to afford restitution and can request the court to reduce the amount of restitution.

We hold that the trial court did not err in failing to hold a separate hearing or make an express determination regarding the defendant's ability to pay under the Crime Victim's Rights Act. In reaching its decision, the trial court implicitly considered both the amount of restitution owed and the defendant's ability to pay within the statutory requirements. The deci-

---

A defendant who timely asserts an inability to pay must be heard, at which time the judge shall determine if the restitution is within the defendant's means. Thus, a defendant's ability to pay when restitution is imposed need only be determined if the defendant timely asserts either an objection to the amount of restitution or an inability to make such payments. 428 Mich 360 (emphasis in the original).

We disagree with the Court of Appeals in *Grant* that the holding of *Music* should be limited to the probation statute. The Crime Victim's Rights Act, like the probation statute in *Music*, makes a distinction between the imposition and payment of restitution. Subsection 17(1) of the Crime Victim's Rights Act, MCL 780.767(1); MSA 28.1287(767)(1), concerns conditions of payment and specifically cross references § 16, MCL 780.766; MSA 28.1287(766), which contains various provisions concerning the imposition of restitution. Section 16 also addresses both parole and probation situations, MCL 780.766(13); MSA 28.1287(766)(13) and, similar to the probation statute, provides that a defendant lacking resources to pay may not be punished for failure to pay restitution, MCL 780.766(16); MSA 28.1287(766)(16). The earlier subsections, 13 and 16, were subsequently renumbered 14 and 17, respectively, in a 1993 amendment, with minor language changes.

When §§ 16 and 17 of the Crime Victim's Rights Act are correctly read together, they fall squarely within the ambit of *Music*. In imposing restitution as part of a sentence under the act, this statute, like the probation statute, does not expressly state that a sentencing judge is required to hold a separate hearing or make express findings regarding a defendant's ability to pay restitution at imposition absent a timely assertion by the defendant that he is unable to pay or disputes the amount of restitution. The rationale in *Music* is equally applicable to the imposition, payment, and punishment provisions of §§ 16 and 17, MCL 780.766; MSA 28.1287(766) and MCL 780.767; MSA 28.1287(767).

The combined statutory language of §§ 16 and 17, like the combined statutory language of the probation statute, requires consideration of payment factors but does not require an express determination on the record regarding the defendant's ability to pay, absent a timely objection, at the time restitution is imposed.

sion of the Court of Appeals is reversed and the order of restitution reinstated.

### I. FACTS AND PROCEDURE

The defendant was charged with four counts of conspiracy to commit uttering and publishing[5] and with being a second felony offender. At the plea hearing, the prosecutor agreed to 1) dismiss three counts of uttering and publishing and the supplemental charge, 2) not charge on other similar offenses if defendant cooperated to clear up the other offenses, and 3) recommend a five-year maximum-minimum sentence. The plea agreement also contained an explicit provision that the defendant would be "responsible for restitution as set by the Court." Both defendant and defense counsel affirmed that these terms constituted the complete agreement. The defendant admitted giving various persons rides to the store or bank to defraud them of their money and that he had received a portion of the defrauded funds. He also admitted an earlier conviction for uttering and publishing. After finding the plea was voluntary, the court accepted the plea agreement.

At the plea hearing, the defendant requested a bond reduction so that he could be released pending sentencing. At that time, defense counsel stated that Mr. Grant had six children, had lived in the area for twenty-three years, had family in the area, and had been steadily employed for the past two and a half years. The prosecutor then stated that the amount of money in this case reached "into the six figures." In response, the defense attorney asserted that the other

---

[5] The victims of the scheme were Great Day Foods, Sy's Market, and Old Kent Bank.

conspirators had been involved in the conspiracy for a longer time and that defendant's involvement was limited. Defense counsel did agree that hundreds of thousands of dollars had been taken but, he claimed, not by defendant. The judge denied the bond reduction motion.

At the sentencing hearing, the judge indicated that he had read the presentence report and the recommendation that, in addition to a term of incarceration, the defendant also pay restitution of $175,000. The report confirmed that the forty-one-year-old defendant had a high school education, had no physical or mental disabilities, and had been previously employed. It related that defendant was not a drug user, was not married, and admitted the paternity of five children.[6] The report further noted that defendant was on parole supervision from a previous uttering and publishing conviction when the instant offense was committed, and that the offense was a major check-cashing scheme. A Grand Rapids police department investigation had determined that defendant was a primary player in an elaborate check-cashing scheme that used police scanners and various runners to perpetrate the fraud, causing a loss to the victims in excess of $175,000.

The court asked defense counsel if he and defendant had received the report. Defense counsel replied that both he and defendant had read and reviewed the contents. Both defendant and counsel were given an opportunity to comment on the contents of the report. Counsel claimed that there was no evidence to

---

[6] In his petition for a court-appointed attorney for the bench trial, defendant indicated that he had an obligation of $100 a week in child support.

support the contention that defendant was one of the main players in the check-cashing scheme and that the defendant only provided rides to three persons to facilitate the check-cashing operation. He stated that the case against defendant did not contain evidence of $175,000 worth of cashed checks. Counsel indicated that the other matters in the report were accurate and that there were no other objections. The defendant agreed with his attorney and made no further comment on the record.

The court acknowledged receipt of the presentence report, the defendant's statement, which according to the presentence report was the defendant's written version of the offense (this statement was not received as part of the record), and various letters written on the defendant's behalf.[7] The judge stated that he had considered these matters before sentencing and that he had read the presentence report. In accordance with the agreed prosecutorial recommendation, defendant was sentenced to a term of five to twenty-one years, and restitution was imposed as a condition of parole for $175,000 to be paid jointly and severally with other codefendants. Defendant made no objection to the imposition of restitution or the amount.

The defendant did not assert at any time that he was unable to pay restitution; rather, defense counsel's remarks at sentencing were directed toward the defendant's alleged limited participation in the conspiracy. The Court of Appeals found that counsel's

---

[7] The letters included two letters from his two ex-girl friends, the mothers of four of his children, one letter from his daughter, one letter from his supervisor at Cascade Engineering, and one letter from a coemployee who had employed him to paint her house.

comments were "insufficient to require the trial court to conduct [a separate] evidentiary hearing."[8] Moreover, because defendant did not challenge the accuracy of the restitution figure, offer evidence in support of any other figure, or specifically request an additional hearing on the restitution order, the Court opined that, given the procedural default, "the trial court was not required to conduct a hearing for the purpose of fulfilling the mandates of [§ 17] MCL 780.767(1);  MSA 28.1287(767)(1)."  210 Mich App 471.

However, the Court of Appeals agreed with defendant that, despite the fact that no separate hearing was required, the trial court's determination of restitution "fell short of the statutory requirements," apparently because the trial court did not expressly consider the factors set forth in the statute, that is, the "defendant's ability to pay, the financial needs of defendant and his family, or any other nonenumerated but relevant factors, such as defendant's claimed limited role in the offense." *Id.* The Court of Appeals vacated the order of restitution and remanded to the trial court for reconsideration. The people sought and we granted leave to appeal. 450 Mich 964 (1996).

## II. RESTITUTION

### A

Restitution in Michigan is afforded not only by statute, but also by Const 1963, art 1, § 24,  which entitles victims of crime to restitution relief.[9] In *People v*

---

[8] 210 Mich App 470, citing *Music, supra* at 361.

[9] In 1988, the Michigan electorate approved a constitutional amendment affording crime victims certain legal rights.

(1) Crime victims, as defined by law, shall have the following rights, as provided by law:

*Peters*, 449 Mich 515, 523-524; 537 NW2d 160 (1995), we observed:

> The Michigan Crime Victim's Rights Act was enacted in 1985 in response to growing recognition of the concerns of crime victims. The act codifies a crime victim's right to restitution, while leaving to the discretion of the sentencing judge the form the restitution will take . . . .
>
> In 1988, after the enactment of the Crime Victim's Rights Act, Michigan's Constitution was amended to further enumerate the rights of crime victims. These laws underscore the rights of crime victims and the compensatory nature of restitution in Michigan.

The compensatory nature of restitution is, therefore, specifically designed to allow crime victims to recoup losses suffered as a result of criminal conduct. *Id.* at 523.[10]

---

The right to be treated with fairness and respect for their dignity and privacy throughout the criminal justice process.

The right to timely disposition of the case following arrest of the accused.

The right to be reasonably protected from the accused throughout the criminal justice process.

The right to notification of court proceedings.

The right to attend trial and all other court proceedings the accused has the right to attend.

The right to confer with the prosecution.

The right to make a statement to the court at sentencing.

The right to restitution.

The right to information about the conviction, sentence, imprisonment, and release of the accused.

(2) The legislature may provide by law for the enforcement of the section.

(3) The legislature may provide for an assessment against convicted defendants to pay for crime victims' rights. [Const 1963, art 1, § 24.]

[10] Although restitution implies a penalty, the line between penal and that which is compensatory is not always clear. However, a legislative enactment that requires a defendant to return victims to something resem-

When restitution is ordered by the court either at the judge's discretion or as part of a plea agreement,[11]

---

bling their precrime status contrasts with the policy factors of rehabilitation, deterrence, protection of society, and punishment, that are the general foundation for criminal sentences usually involving a term of imprisonment, a fine, or both. *People v Schultz*, 435 Mich 517, 531-532; 460 NW2d 505 (1990).

See *United States v Ursery*, 518 US 267, 291-292; 116 S Ct 2135; 135 L Ed 2d 549 (1996). In *Ursery*, the Supreme Court opined that federal statutes providing for civil forfeiture following criminal prosecution have not historically been regarded as punishment. The Court further noted that Congress may impose both criminal and civil sanctions in respect to the same act or omission and that statutes serving the purpose of deterrence may further assist civil as well as criminal goals. " '[F]orfeiture . . . serves a deterrent purpose distinct from any punitive purpose,' " therefore, the fact that a "forfeiture statute has some connection to a criminal violation" does not prove that a proceeding is criminal or that forfeiture is punishment. *Id.* at 292.

[11] Although defendant Grant's guilty plea included a specific agreement to pay restitution to be set by the court, at the time of this defendant's offenses, plea, and sentence, the then existent statute provided that a court "may" order restitution. MCL 780.766(2); MSA 28.1287(766)(2), as amended by 1988 PA 21; MCL 769.1a(2); MSA 28.1073(2), as enacted by 1985 PA 89. Before 1994, § 16, MCL 780.766(2), (3); MSA 28.1287(766)(2), (3) read as follows:

(2) The court, when sentencing a defendant convicted of a crime, may order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make restitution to any victim of the defendant's course of conduct which gives rise to the conviction, or to the victim's estate.

(3) If the court does not order restitution, or orders only partial restitution under this section, the court shall state on the record the reasons for that action.

The permissive language of the statute allowed trial courts to order restitution at their discretion. Thus, even absent a specific restitution agreement in the plea, the circuit court had independent statutory authority to order restitution.

The federal restitution statute in effect before April, 1996, 18 USC 3663(a)(1)(A), parallels the Michigan restitution statute in effect until May, 1994, and has similar provisions:

The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that

MCL 780.767(1); MSA 28.1287(767)(1), subsection 17(1) requires:

> The court, in determining whether to order restitution under section 16[12] and the amount of that restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources and earning ability of the defendant, the financial needs of the defendant and the defendant's dependents, and such other factors as the court considers appropriate.[13]

---

the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate.

The federal statute, in contrast to the Michigan statute, expressly recognizes that restitution may be a part of the plea agreement.

> The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement. [18 USC 3663(a)(3).]

[12] MCL 780.766; MSA 28.1287(766). The Crime Victim's Rights Act was amended in 1993 and currently provides that the trial court "shall" order restitution. However, this version did not go into effect until May 1, 1994, after defendant's October, 1993, sentencing hearing.

Federal law has also adopted the mandatory language. See 18 USC 3663A(a)(1).

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

[13] 18 USC 3663(a)(1)(B)(i), in effect before 1996, parallels the Michigan statute and has similar provisions:

> The court, in determining whether to order restitution under this section, shall consider—
> (I) the amount of the loss sustained by each victim as a result of the offense; and
> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

The statute involves two separate inquiries: first, a determination of the amount of the victim's loss and, second, an evaluation of the factors that would affect the defendant's ability to pay restitution.[14]

The first inquiry requires consideration regarding the amount of the victim's loss. In the present case, the presentence report recommended restitution in the amount of $175,000 to be paid jointly and severally with other codefendants. Defense counsel stated that both he and defendant had reviewed the report. Defendant did not request a hearing on this issue, there was no objection to the amount of the loss, and defendant did not offer evidence to support any other figure.[15]

The presentence report specifically stated that the police had investigated the conspiracy and confirmed the amount of the loss sustained by the victims. A judge is entitled to rely on the information in the presentence report,[16] which is presumed to be accurate unless the defendant effectively challenges the

---

[14] In *People v Guajardo*, 213 Mich App 198, 200-201; 539 NW2d 570 (1995), the Court of Appeals correctly concluded that under the Crime Victim's Rights Act:

The determinations of the amount of loss sustained by the victim and the defendant's ability to pay for the loss are separate questions. A defendant's inability to make restitution in full or in part does not diminish the amount of loss sustained by the victim. However, it may affect the amount of restitution ordered by the court.

[15] See *Guajardo*, n 14 *supra* at 200:

The statute is silent regarding how to determine the amount of the loss sustained by the victim as a result of the offense. . . . [T]he amount should be based upon the evidence.

[16] See *Grant*, *supra* at 472. The Court of Appeals acknowledged that the trial court "was entitled to rely on" the presentence report.

accuracy of the factual information.[17] The defendant knew in advance and agreed that he would be required to pay restitution as "set by the Court" and that the amount was "into the six figures." In the present case, the voluntary nature of the plea and the express terms of the plea agreement evidence that defendant was fully aware and accepted his obligation to pay whatever amount the court determined was appropriate restitution for the losses sustained by the victims. The defendant did not present any information contrary to the amount of restitution imposed or offer support for any other figure.

B ·

With regard to defendant's claim that the trial court was required to conduct a separate hearing, we agree

---

[17] See ABA Standards for Criminal Justice (3d ed), standard 18-5.18(a).

The rules of procedure should provide that the sentencing court resolve issues of fact material to the sentence to be imposed.

(i) The standard of proof on all issues of fact should be by a preponderance of the evidence.

(ii) The court may treat the unchallenged factual information in a presentence report as accurate.

(iii) The court may consider facts proven at the trial of the offender or facts established on the record of the acceptance of a plea.

See also *People v Lee*, 391 Mich 618, 635; 218 NW2d 655 (1974):

The presentence report, mandatory for felony cases in Michigan since 1931, allows the court to make an informed judgment as to possibilities for rehabilitation, and to effectively utilize sentencing . alternatives. The presentence report has been widely regarded as an effective method of supplying information essential to an informed sentencing decision. See *Sentencing Alternatives and Procedures*, ABA Project on Minimum Standards for Criminal Justice, § 4.1, p 201; *Williams v New York*, 337 US 241, 249-250; 69 S Ct 1079; 93 L Ed 1337 (1949); *Gregg v United States*, 394 US 489, 492; 89 S Ct 1134; 22 L Ed 2d 442 (1969).

with the Court of Appeals that the statute did not
mandate a separate hearing. Because the defendant
agreed to make restitution and did not contest the
amount of loss, defendant did not effectively chal-
lenge the accuracy of the statement regarding the
amount of the loss to the victims that was provided in
the presentence report. Absent a dispute, the court
was not required to make express findings regarding
the amount of restitution. The judge properly relied
on the information in the presentence report in deter-
mining the amount of restitution.[18] However, we disa-
gree with the Court of Appeals that defendant's claim
that he had only taken part in three specific minor

---

[18] Several federal courts reviewing such situations have affirmed similar
results.

*United States v Zink*, 107 F3d 716 (CA 9, 1997). The court held that a
sixty-year-old bankrupt defendant had agreed in his plea to pay the full
amount of restitution to be determined by the court at sentencing. The
defendant was fully informed that the amount of restitution was $5.8 mil-
lion and there was no objection to that amount. On the basis of the agree-
ment to pay restitution and the failure to object, the district court did not
err in ordering the $5.8 million in restitution.

*United States v Allison*, 59 F3d 43, 46 (CA 6, 1995). In the plea agree-
ment, the defendant agreed to pay "in any amount not exceeding
$454,477.82." The defendant did not object when the district court ordered
restitution in that amount. On appeal, the court found that the defendant
had waived her right to contest the amount of restitution because she had
agreed not to "appeal the accuracy" of this factor. The court noted that
the presentence report informed the defendant that restitution was appli-
cable, she acknowledged the amount, did not object to the report, and did
not argue in opposition to restitution.

*United States v Gabriele*, 24 F3d 68, 72 (CA 10, 1994). The court found
no abuse of discretion in the district court's failure to make a specific loss
determination. At sentencing the defendant made no objection to restitu-
tion or the loss determination and acknowledged that his only dispute
was with the validity of his prior convictions. The court stated that the
statute does not require the trial court to make specific factual findings
unless the restitution amount is disputed. The court reviewed the entire
record and concluded that the $100,000 in restitution was well docu-
mented and less than the actual loss figure.

instances that involved him in the conspiracy was not properly considered by the trial court.

The Crime Victim's Rights Act provides restitution "to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." MCL 780.766(2); MSA 28.1287(766)(2).[19] The crime of conspiracy involves a defendant's course of conduct and is based upon an unlawful agreement between coconspirators. A conspirator need not participate in all the objects of the conspiracy. In general, each conspirator is held criminally responsible for the acts of his associates committed in furtherance of the common design, and, in the eyes of the law, the acts of one or more are the acts of all the conspirators. *People v Houseman*, 128 Mich App 17, 23-24; 339 NW2d 666 (1983).[20] The defendant pleaded guilty of conspiracy

---

[19] The corresponding federal restitution statute, 18 USC 3663(a)(2), specifically includes conspiracy:

For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

[20] *Houseman, supra* at 23-24 states:

The gist of conspiracy is the unlawful agreement. *People v Carter*, 415 Mich 558, 568; 330 NW2d 314 (1982). A conspirator need not participate in all the objects of the conspiracy. *People v Garska*, 303 Mich 313; 6 NW2d 527 (1942). In fact, he need not even know all the other co-conspirators. *People v DeLano*, 318 Mich 557, 567; 28 NW2d 909 (1947), cert den 334 US 818; 68 S Ct 1082; 92 L Ed 1748 (1948). In fact:

"It is a general rule that each conspirator is criminally responsible for the acts of his associate committed in furtherance of the common design and before the accomplishment thereof, the act of one or more being in contemplation of law the act of all. 15A CJS, Conspiracy, § 74, p 825."

and accepted restitution set by the court, which he received in exchange for limiting his sentence exposure from life (habitual offender, fourth)[21] to a five-year minimum. The defendant cannot now assert that he is responsible for his acts alone because he is also responsible for the acts of his coconspirators made in furtherance of the conspiracy.

Section 17 also requires the court, when determining whether to order restitution under § 16 and, if ordered, the amount of restitution to be imposed, to consider the following factors: 1) the financial resources and earning capacity of the defendant, 2) the financial needs of the defendant and his dependents, and 3) such other factors as the court considers appropriate. We find that by entering into the plea agreement, defendant acknowledged the existence of these factors and agreed that he could make restitution. We agree with the Court of Appeals decision in *People v Hart*, 211 Mich App 703, 708; 536 NW2d 605 (1995), that a defendant who enters into a plea agreement that includes restitution "implicitly agree[s]" to pay restitution in an amount to be decided by the court. By voluntarily entering into the plea agreement, the defendant authorized the court to determine that

---

This rule is followed in Michigan. *Carter, supra,* 415 Mich 581, n 23; *People v Roxborough,* 307 Mich 575; 12 NW2d 466 (1943), cert den 323 US 749; 65 S Ct 80; 89 L Ed 600 (1944); *People v Knoll,* 258 Mich 89; 242 NW 222 (1932); *People v Lay,* 193 Mich 476; 160 NW 467 (1916). See also *Pinkerton v United States,* 328 US 640; 66 S Ct 1180; 90 L Ed 1489 (1946).

Conviction of an accused of criminal conspiracy does not necessitate a showing that each accused conspirator know the full scope of the conspiracy or participate in carrying out each detail, or that he was acquainted with each of his coconspirators or knew the exact part played by each of them.

[21] MCL 769.12(1)(a); MSA 28.1084(1)(a).

the defendant had considered his own financial situation and concluded that he has or will have the ability to pay.[22]

### C

We also agree with the Court of Appeals in *Hart* that "the restitution agreement cannot be construed as establishing a waiver of the right to have a court review such things as ability to pay and resources," but the statute does not "require[] the court to hold an evidentiary hearing regarding the enumerated factors . . . ." Rather, the trial "court merely must consider those factors in reaching its decision." *Id.* at 708-709. The statute places the responsibility on the defendant in the case of a dispute in respect to the proper amount or type of restitution, to demonstrate his financial resources, needs, and the needs of his dependents[23] in order to rebut the presumption created by the defendant's agreement to pay restitution.

In the instant case, as in *Hart*, the lower court considered the enumerated factors and found nothing to overcome the presumption created by defendant's plea agreement. A review of the presentence report

---

[22] Restitution is a fixed obligation under the plea agreement.

[O]nly in circumstances where a defendant has suffered an unanticipated reverse affecting his financial situation following entry into the agreement would there be adequate justification to relieve him of his obligation. To hold otherwise, of course, would be to encourage advantage taking by restitution-seeking defendants. [*Hart, supra* at 708-709.]

[23] MCL 780.767(4); MSA 28.1287(767)(4) states in pertinent part:

The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and the defendant's dependents shall be on the defendant.

and other facts on the record affirmed that the trial court had decided the issue regarding defendant's earning ability by determining that the defendant possessed skills that would aid him in his search for employment. Accordingly, we agree and adopt the conclusion that, as in *Hart*:

> [T]he trial court properly considered the express and implied terms of defendant's restitution agreement, including, of course, his earning ability and financial resources and the financial needs of defendant and defendant's dependents. In short, defendant's ambiguous assertions of an inability to pay did not rebut the strong presumption of financial ability created by his entering a plea agreement to pay restitution. [*Id.* at 710.]

D

The Crime Victim's Rights Act was passed in an attempt to address public concerns regarding the disproportionate treatment of victims of crime.[24] To rec-

---

[24] We note that the Crime Victim's Rights Act has been amended, effective June 1, 1997. Section 16, which had been amended in 1993 to be effective in 1994 adding to MCL 780.766;  MSA 28.1287(766)  a new subsection 13 to correspond to the language in § 17, MCL 780.767(1);  MSA 28.1287(767)(1). Subsection 13 provided:

> In determining the amount of restitution, the court shall consider the defendant's earning ability, financial resources, and any other special circumstances that may have a bearing on the defendant's ability to pay.

This section has been entirely deleted and a new subsection 13 has been enacted that states:

> An order of restitution entered under this section remains effective until it is satisfied in full. An order or restitution is a judgment and lien against all property of the defendant for the amount specified in the order of restitution. The lien may be recorded as provided by law. An order of restitution may be enforced by the prosecuting attorney, a victim, a victim's estate, or any other person or

tify a perceived insensitivity to the plight of crime victims, the Legislature acted to recognize victims needs and rights. House Legislative Analysis, HB 4009, 4545, and 4370, July 16, 1985, p 2. In addition to other provisions, the Legislature proposed that restitution be made to crime victims who had suffered "direct or threatened physical, financial, or emotional harm . . . ." In accord with this intent, the statute adopted language from the legislative analysis that contemplates that victims are entitled to full restitution for their losses, payable immediately. *Id.*[25]

---

entity named in the order to receive the restitution in the same manner as a judgment in a civil action or a lien.

Section 17, MCL 780.767(1); MSA 28.1287(767)(1), see n 1 *supra*, for statutory text, unaltered since 1985 now states:

In determining the amount of restitution to order under section 16, the court shall consider the amount of the loss sustained by any victim as a result of the offense.

Thus, both sections have been significantly altered and all previous references to a defendant's ability to pay restitution have been deleted. While this revised statute was not in effect at the time of the instant defendant's order of restitution, the Legislature has indicated its intent to carry out the mandate of art 1, § 24, by authorizing that restitution be imposed at the time of sentencing without regard to the defendants' ability to pay.

Federal law has similarly been amended. See 18 USC 3664(f)(1)(a), which states:

In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

[25] The statute states that, if a court does not order restitution or orders only partial restitution, it will have to explain the reasons on the record. MCL 780.766(3); MSA 28.1287(766)(3). See n 30 and accompanying text for corresponding federal cases.

The statute also requires restitution to be paid immediately or, if the court determines the circumstances require, within a specified period or in specific installments. The timing of payment may also be dependent on the defendant's status of probation or parole. MCL 780.766(11); MSA 28.1287(766)(11).

Following this resolution, the Legislature determined that the court would be required to consider "the resources and earning ability of the defendant" as well as the "financial needs of the defendant and his or her dependents, and other appropriate factors." *Id.* These considerations indicate that the Legislature was aware that payment of restitution in full, as contemplated, would be dependent on the existing financial resources of the defendant or his ability to earn before a victim might have, in a practical sense, any hope of recovering his losses. Thus, the statute provided a means for the trial court to determine if a defendant had the resources or ability to pay the amount of the victim's loss and what the victim might actually expect to recover.[26]

---

[26] Additionally, it should be noted that the legislators afforded considerable safeguards to defendants required to pay restitution. For example, § 16 of the act requires that any restitution ordered shall be set off against any amount that is later recovered by a victim as compensatory damages. MCL 780.766(11); MSA 28.1287(766)(11). In the present case, a bank had significant losses as a result of the check-cashing scheme. If the bank carried liability insurance covering this type of fraudulent scheme, recovery from the insurer would offset the restitution amount, reducing defendant's obligation. See, generally, Couch, Insurance, 2d (rev ed), §§ 44:329-44:342, pp 504-519.

Protection is provided to defendants on probation or parole who are without resources to pay restitution. Probation or parole may be revoked only if the defendant fails to comply with restitution or has not made a good-faith effort to comply with the order. All relevant concerns are first considered such as defendant's employment status, earning ability, financial resources, wilfulness of the failure to pay and any other special circumstances bearing on the defendant's ability to pay. MCL 780.766(13); MSA 28.1287(766)(13) subsequently renumbered subsection 14.

Defendants are also protected from jail or incarceration for nonpayment of restitution unless the defendant has resources to pay the restitution or has not made a good-faith effort toward payment of the restitution. MCL 780.766(16); MSA 28.1287(766)(16) subsequently renumbered subsection 17.

Finally, a defendant not in wilful default of the payment of restitution may at any time petition the sentencing judge to cancel any unpaid portion of the restitution. If the judge finds that payment of the amount due

E

In the instant case, the trial court properly reviewed and considered defendant Grant's presentence report, his written and oral statements, and various letters submitted on his behalf. The presentence report confirmed that the forty-one-year-old defendant had a high school education, no physical or mental disabilities, had previously been employed, was not a drug user, was not married, and admitted the paternity of five nonmarital children for which he claimed a total obligation of $100 a week in child support. The letters in support of the defendant indicated that he had been steadily employed for the past two and a half years at Cascade Engineering and, in addition, was a professional painter. This was sufficient information for the trial court to consider the defendant's financial resources and the financial needs of the defendant and his dependents.[27] The defendant did not assert that he could not pay the restitution amount or present any evidence to rebut the "strong presumption of financial ability created by his entering a plea agreement" that included an

---

will impose manifest hardship on the defendant or his immediate family, the court may cancel all or part of the amount due. MCL 780.766(14); MSA 28.1287(766)(14) subsequently renumbered subsection 15.

[27] This information supports the court's finding that the defendant had an ability to earn. We note that defendant Grant had more education and job skills than the defendant in *Guajardo*, n 14 *supra* at 201. In *Guajardo*, the Court of Appeals found, on the basis of the presentence report, that although the defendant had only an eighth grade education and no job skills, he also had no physical or mental disabilities and no known dependents. The appellate court held that the trial court's findings and order of restitution were supported by sufficient evidence and upheld the $28,105 restitution amount agreed upon in the plea bargain.

understanding in the agreement to pay restitution in an amount to be set by the court. 211 Mich App 710.[28]

We hold that the language of the statute does not require the trial judge to make a separate factual inquiry and individual findings on the record. When determining restitution, whether it is included in the plea agreement or is statutorily imposed at the discretion of the trial court, the statute requires the court "to consider" the enumerated factors in light of all the information available at the time of the sentencing hearing and then impose the sentence. Only an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence. MCL 780.767(4); MSA 28.1287(767)(4).[29] Further, the inclusion of restitution in the plea agreement establishes a strong presumption that the defendant has or will have the financial ability to pay restitution.[30]

---

[28] We agree with the Court of Appeals in *Hart* that the defendant did not pursue the proper remedy. In this case, as in *Hart*, the Court stated:

> If defendant was unhappy with his plea bargain, his remedy was to move to withdraw his plea. This he did not do and, indeed, even at this point does not seek to do. Accordingly, he is bound by the agreement and his claim is without merit. [211 Mich App 710.]

[29] MCL 780.767(4); MSA 28.1287(767)(4). See n 1 *supra* for statutory text.

[30] This holding is consistent with federal courts that have considered the issue under the federal Victim and Witness Protection Act, 18 USC 3663, 3664 (transferred from 18 USC 3579, 3580), which employs language similar to the Michigan statute.

The Victim and Witness Protection Act, 18 USC 3579, 3580, requires a sentencing court to consider the following factors: the amount of loss sustained by any victim, the defendant's financial needs and earning ability, the defendant's dependents, and the financial earning ability of the defendant and his dependents, and other factors that the court deems appropriate. *United States v Fox*, 941 F2d 480, 485 (CA 7, 1991).

### III. CONCLUSION

In sum, we hold that the sentencing court was not required to hold a separate hearing or to make express findings on the record in respect to the amount of restitution or the defendant's ability to pay restitution absent a timely objection by the defendant. The trial court properly considered the enumerated factors within the statutory requirements. Because defendant did not object to the amount of restitution and did not present any evidence in support of an alternative amount, he has failed to overcome the strong presumption of financial ability to pay restitution created by the voluntary plea agreement. We reverse the decision of the Court of Appeals and reinstate the order of restitution.

---

In *Fox*, the court said that the VWPA contemplates full restitution to compensate the victims of crime and that the congressional intent was that the wrongdoer restore the victims' losses entirely. The above statutory factors are to be considered by the court, but the court is required to make findings on the record only if full restitution is not ordered.

In *United States v Gabriele*, n 18 *supra* at 73, the court stated that the sentencing court is not required to make specific findings regarding a defendant's ability to pay provided that "sufficient information is made available to and is considered by the court." The court found the fact that the defendant was without financial resources at the time of sentencing does not bar a restitution order and that the district judge stated on the record that he had reviewed the presentence report that detailed the financial resources, educational, and employment history of the defendant as well as the probation office recommendation of $100,000 restitution. The court determined that this was a satisfactory indication that the statutory factors were considered.

In *United States v Blanchard*, 9 F3d 22, 25 (CA 6, 1993), the court maintained that the information available to the trial court through the presentence report, combined with inferences therefrom and other factors known to the trial court, gave sufficient indication that the trial court had considered the statutory factors in determining restitution. The court further opined that "[t]his court has refused . . . to require the district court to make factual findings on the record regarding the financial ability to pay."

MALLETT, C.J., and BRICKLEY, CAVANAGH, RILEY, WEAVER, and KELLY, JJ., concurred with BOYLE, J.