# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DON D. WRIGHT,

      Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 328959
Wayne Circuit Court
LC No. 14-000304-FC

Before: BOONSTRA, P.J., and CAVANAGH and K.F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of carjacking, MCL 750.529a, and unarmed robbery, MCL 750.530. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 12 to 20 years' imprisonment for the carjacking conviction and 5 to 15 years' imprisonment for the unarmed robbery conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a December 2, 2013 carjacking in the parking lot at 459 Prentis, Detroit, Michigan. Around 11:00 p.m., Marcus Beri walked out to his 2002 navy blue Oldsmobile Intrigue. As Beri was putting his keys in the door to unlock the vehicle, three unfamiliar black males approached and pushed him into the car. A white vehicle then pulled up behind him, blocking them in. Two of the men yelled at Beri and demanded that he give them money and his laptop or cellphone, while a third man acted as a lookout. When Beri pulled out his wallet to show that he did not have any money, one of the men grabbed the wallet from his hand and searched through it. One also went through Beri's pockets and took his Samsung Galaxy S4 cellular telephone. The men[1] then grabbed the keys to the car out of Beri's hand. Beri ran down the street, away from his attackers, and as he turned around to look back, the three men were driving off in his car. The white vehicle followed. Beri was unable to provide a detailed description of the suspects to Detroit Police.

---

[1] Beri did not specify which of the men robbing him committed which act; rather, he testified that two men had physical contact with him and yelled at him while one acted as a lookout.

-1-

On December 11, 2013, at around 4:00 p.m., Sergeant Patrick Saunders of the Detroit Police Department Commercial Auto Theft Section (CATS) was surveilling for stolen and carjacked vehicles. Sergeant Saunders was traveling southbound on Quincy in an unmarked police vehicle when in his rearview mirror he spotted a blue car on a side street. Saunders testified that, at the time, he was looking for a blue "Alero" that had been carjacked "about a week or two" earlier.[2] As Saunders came to a red light at Grand River, he observed the blue car drive up behind him and then turn into a tire shop on the corner. When the traffic light turned green, Saunders made a U-turn in order to circle back and check the car's license plate. By running the license plate number through the law enforcement information network (LEIN), Saunders was able to confirm that the car was Beri's carjacked vehicle.

After identifying the vehicle, Saunders made a radio announcement to all other members of CATS, and the team began surveillance of the vehicle. The CATS team, comprised of roughly 14 to 16 officers in unmarked cars, trailed the vehicle through the city of Detroit until 5:30 p.m. or 6:00 p.m., when it ultimately stopped at a two-story residence on Terry Street. In "hot pursuit[,]" the CATS team entered the residence and secured the first floor. Saunders led his team to the second floor, where he encountered defendant. After obtaining a search warrant, the CATS team executed a search of the residence, and in a crawl space above a ceiling tile on the second floor, found a set of car keys matching the vehicle that CATS had been surveilling. Defendant and seven or eight other young men were arrested and transported to the Detroit Detention Center.

On December 12, 2013, Beri was asked to come to the Detroit Detention Center to look at a lineup. Beri was shown two live lineups made up of six men each but was unable to identify any of his attackers. After the lineup, Sergeant Otha Craighead and Detective Derek Owens interrogated defendant at the Detroit Detention Center. During the course of the interrogation, defendant gave incriminating statements. Defendant's trial counsel moved in the lower court to suppress defendant's statements, arguing that defendant was not adequately advised of his constitutional rights and that, due to his age and mental capacity, defendant did not understand his *Miranda*[3] rights, and based on the totality of the circumstances, defendant's statements were not voluntary. Defendant requested an order suppressing all statements made while defendant was in police custody or, in the alternative, that an evidentiary hearing be held pursuant to *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

A *Walker* hearing was held on March 14, 2014. Owens and Craighead testified regarding their roles in defendant's interrogation. Owens was primarily responsible for conducting defendant's interrogation, while Craighead observed. Owens testified that he used the Constitutional Rights Certification of Notification form before the interrogation to ensure that defendant could read, write, and understand his rights. Defendant read each of the five

---

[2] Saunders testified at defendant's trial that an Oldsmobile Intrigue and a Buick Alero have the same body, but come from different manufacturers. Thus, the "Alero" that he was looking for was the same vehicle as Beri's Intrigue.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

paragraphs aloud to Detective Owens, and then acknowledged that he understood each paragraph by placing his initials next to it. Owens then signed, dated, and noted the time of the interrogation on the form. Owens also noted that defendant was 17 years old, attended Central Heights High School until the tenth grade, could read and write, and did not appear to be under the influence of any drugs or alcohol. Owens testified that he was not aware of defendant's status as a special education student, or that defendant received social security disability payments due to his limitations. Owens found defendant to be "very intelligent[,]" despite the fact that defendant made several statements that did not relate to the event at issue and had to be refocused. Based on their interaction, nothing indicated to Owens that defendant did not fully understand his constitutional rights. Both Owens and Craighead testified that during the course of defendant's interrogation, they did not threaten defendant, did not make any promises to defendant, did not use force or coercion to elicit statements from defendant, and did not engage in any trickery or deceit with defendant. They also testified that they did not deprive defendant of adequate food, sleep, or medication.

Defendant testified on his own behalf at the evidentiary hearing. Defendant testified that he remembered signing the Constitutional Rights Certification of Notification form, but that he did not actually know what it was. According to defendant, the officers read the form aloud to him and told him that it was a property release form accompanied by "a second form" that he needed to sign to go home. Defendant stated that, during the interrogation, he was "really nervous because [he] didn't want to get locked up for something [he] didn't do."

Defendant testified that the officers threatened him during the interrogation by saying that if he did not sign a "third paper" he would not be able to go home, he would be charged with "something fed[,]" his mother and his father would be locked up for 15 years, and his little brother would also be going to jail. Defendant further stated that the officers told him that he would be looking at 15 to 25 years, that he may never be getting out, and that he "was going to be eating a lot of sandwiches and juice bags[.]" Defendant testified that he remembered signing the Constitutional Rights Certification of Notification form, but not the purported two-page confession. The trial court clarified defendant's testimony during the following exchange:

*Q*. When you signed it [the statement], when the police placed the papers in front of you to sign, did you try to read what you were signing on each page?

*A*. There wasn't nothing on it. It was blank. Two papers was blank. And he was saying sign the bottom of it because they got three papers and this property release form, and I would get released.

*Q*. Did you see that anywhere on the papers that you signed, anything about a release?

*A*. No, I couldn't really read it.

*Q*. But, there was writing on the page.

*A*. It was those printed letters on there, but it wasn't like somebody had written on the paper and written – not hand written.

-3-

*Q*. So, you said when you signed these papers, the whole page was blank?

*A*. Yes, and it had a signature in the middle.

After the conclusion of witness testimony, defense counsel argued that defendant was

a babe in the woods with these officers here. They're good at what they do. What's this kid? He's a special ed student. If the Court please, we've got some documentation about his educational background from Social Security, from school. I don't think we need to get to that point.

The trial court interjected, stating: "[w]ell, if that's what you're relying on, there's been no evidence to that effect that's been introduced during the course of the hearing other than your say-so." Defense counsel replied, "I would be happy to present these to the Court and to the prosecution, but that's not really the thrust of my argument[.]" Ultimately, the trial court denied defendant's motion, stating:

[b]ased on the testimony of both officers and [defendant's] testimony that he was familiar with his Constitutional Rights, and the fact that he did affix his signature to the form, I find that [defendant] did understand his *Miranda* rights and that he did intelligently and knowingly waive those rights.

The trial court also found that defendant's testimony that he was given blank pieces of paper to sign, was not credible, and thus, "the statement was knowingly and voluntarily made" and would not be suppressed. Accordingly, defendant's confession was read into evidence at trial. He was convicted by the jury of carjacking and unarmed robbery. Defendant was sentenced to concurrent terms of 12 to 20 years' imprisonment for the carjacking conviction, and 5 to 15 years' imprisonment for the unarmed robbery conviction. The trial court also ordered defendant to pay restitution to the victim in the amount of $3,055. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel provided ineffective assistance at the evidentiary hearing on defendant's motion to suppress statements. Specifically, counsel failed to present or request expert assistance to address various psychological issues that were crucial to determining whether defendant's confession was voluntary. Defendant claims that he suffered prejudice from counsel's error because the confession played a large role in his convictions, and that but for trial counsel's ineffective assistance at the evidentiary hearing, there was a reasonable probability that defendant's confession would have been suppressed. We disagree.

Defendant's claim of ineffective assistance of counsel is unpreserved. To preserve a claim of ineffective assistance of counsel on appeal, a defendant must move for a new trial or request a *Ginther*[4] hearing in the trial court. *People v Solloway*, ___ Mich App ___, ___; ___

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

NW2d ___ (2016) (Docket No. 324559); slip op at 7, citing *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998). Defendant did not move for a new trial or a *Ginther* hearing based on ineffective assistance in the trial court. Accordingly, our review is limited to errors apparent on the record. *Solloway*, ___ Mich App at ___; slip op at 7; *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, __ Mich App at __; slip op at 7, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Solloway*, __ Mich App at __; slip op at 7.

We conclude that defendant has failed to establish that trial counsel's representation at the evidentiary hearing on defendant's motion to suppress statements was objectively unreasonable. Thus, defendant's claim that trial counsel provided ineffective assistance by failing to present an expert witness to testify regarding defendant's mental health history is without merit.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). When claiming ineffective assistance of counsel, it is defendant's burden to prove (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness and (2) the deficient representation prejudiced the defendant, meaning but for counsel's error, there is a reasonable probability that the outcome of defendant's trial would have been different." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Solloway*, __ Mich App at __; slip op at 7. A defendant must also show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 694-696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Trial counsel's performance is evaluated by an objective standard of reasonableness and without benefit of hindsight. *People v Payne*, 285 Mich App 181, 188, 190; 774 NW2d 714 (2009). In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012), citing *Strickland*, 466 US at 689. A reviewing Court, however, "cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Trial counsel has a duty to undertake reasonable investigation. *Id*. A reviewing Court must determine whether a strategic choice was made after a complete investigation was undertaken and, if the investigation was limited, whether the decision to undertake a limited investigation was made pursuant to reasonable professional judgment. *Id*. Nonetheless, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*¸ 263 Mich App 42, 61; 687 NW2d 342 (2004).

Trial counsel did not present or request an order appointing an expert witness to testify at the evidentiary hearing regarding defendant's mental health status. Although trial counsel mentioned that defendant was a special education student and received social security disability benefits due to some mental health issues, trial counsel indicated that defendant's mental health

history was "not really the thrust of [his] argument." Instead, trial counsel pursued the theory that the police convinced defendant to confess to the carjacking, even if it were a false confession, under the pretense that if he signed their papers, he would be able to go home. Additionally, defendant testified at the evidentiary hearing that he only signed one or more blank sheets of paper and that the police later filled in a confession.

Neither trial counsel nor defendant claimed at the evidentiary hearing that defendant's confession was involuntary due to defendant's mental health. On appeal, defendant claims that trial counsel's failure to present expert witness testimony at the evidentiary hearing amounts to ineffective assistance of counsel, because defendant's "various psychological issues . . . were crucial to whether his confession was voluntarily[,]" and that

> [a] cursory review of the medical documentation provided to [trial] counsel reveals that [defendant] had numerous psychological issues. Moreover, it is likely that an in[-]depth analysis would reveal that [defendant] had additional issues that would effect [sic] his capacity to make a free and constrained choice.

However, defendant has failed to establish a factual predicate for his claim. *Hoag*, 460 Mich at 6. The decision regarding whether to present an expert witness is a matter of trial strategy, which this Court cannot "second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). The fact that trial counsel did not call an expert witness to testify regarding defendant's mental health would only constitute ineffective assistance of counsel if it were to deprive defendant of a substantial defense. *Dixon*, 263 Mich App at 398. Trial counsel did present a substantial defense in this case, specifically that defendant's confession was not voluntary because he was promised that if he signed the papers, he would be able to go home. Trial counsel sought to bolster this theory through cross-examination of each officer. Additionally, at no point during defendant's own testimony at the evidentiary hearing did he suggest that any psychological issues affected his decision to sign the papers. Instead, defendant testified that he signed blank pieces of paper and that the police later filled in the confession. Defendant's claim of ineffective assistance of counsel is therefore without merit.

Defendant also argues that his "numerous psychological issues" affected his ability "to voluntarily waive his *Miranda* rights and/or allegedly confess to having committed the offenses" charged. Defendant's presentence investigation report states that defendant's mother, Lakesha Lewis, indicated that defendant had been diagnosed with ADHD and was "currently taking psychotropic medications." However, on appeal, defendant fails to identify what his numerous psychological issues are, how his ADHD would affect the voluntariness of his statements, or what medications defendant was taking to address his psychological issues. Further, defendant has not identified an expert who would have testified favorably for defendant. It is clear that, based on trial counsel's arguments at the evidentiary hearing, trial counsel was, at the very least, aware of defendant's psychological issues, and his failure to address them or include them in defendant's defense was a strategic choice. The evidence presented by defendant, and his allegation that a hypothetical expert witness would have testified in his favor, does not support the conclusion that trial counsel's strategy was unreasonable. The fact that trial counsel's strategy proved unsuccessful does not make it ineffective assistance. *Matuszak¸* 263 Mich App at 61.

Defendant is also unable to show that any prejudice resulted from trial counsel's strategy. *Strickland*, 466 US at 687. After not only hearing defendant's testimony at the evidentiary hearing, but also examining defendant from the bench, the trial court found that there was not "any physical or mental state of the defendant that would render [defendant's] statement involuntary." Accordingly, defendant is unable to show that but for counsel's error, there is a reasonable probability that defendant's confession would have been suppressed. *Strickland*, 466 US at 687.

Defendant's reliance on *People v Ackley*, 497 Mich 391; 870 NW2d 858 (2015), is misplaced. In *Ackley*, our Supreme Court examined whether a defendant's trial counsel was ineffective for failing to retain an expert where the defendant was charged with first-degree felony murder and first-degree child abuse after his live-in girlfriend's three-year-old daughter died while in the defendant's care. *Ackley*, 497 Mich at 384. The defendant's trial counsel failed to call an expert witness, even though the trial court had provided funding for expert assistance and trial counsel had been specifically referred to an expert who would have testified consistently with the defense theory. *Id*. at 389-390. Our Supreme Court found that the trial counsel's failure to

> engage 'expert testimony rebutting the state's expert testimony' and to become 'versed in [the] technical subject matter' most critical to the case resulted in two things: a defense theory without objective, expert testimonial support, and a defense counsel insufficiently equipped to challenge the prosecution's experts . . . . This 'constitute[d] a constitution flaw in the representation' of the defendant, not reasonable strategy. [*Id*. at 392 (citations omitted).]

Here, no complex medical science needed to be explained or rebutted. And defendant provides no evidence that trial counsel ignored the need for expert witness testimony in this case. That trial counsel chose not to pursue defendant's psychological issues to undermine the voluntariness of defendant's confession did not leave defendant without a reasonable trial strategy. Again, just because a strategy actually used by trial counsel does not prove successful does not mean that it was unreasonable or amounted to ineffective assistance of counsel. *Matuszak*¸ 263 Mich App at 61.

## III. RESTITUTION

Next, defendant contends that the trial court erred by ordering defendant to pay $3,055 in restitution to the victim, because no facts or documentation to support the amount of restitution was provided at sentencing. We disagree.

Generally, a trial court's order of restitution is reviewed for an abuse of discretion. *People v Turn*, __ Mich App __, __; __ NW2d __ (2016); slip op at 2, citing *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). However, as defendant did not object to the amount of restitution at sentencing, this issue is unpreserved for appeal. *People v Cain*, 498 Mich 108, 114-116; 869 NW2d 829 (2015). Accordingly, this Court's review is limited to plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Plain error is shown by proving "(1) [the] error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights. *Id*. at 763. Generally, to show the error affected

substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id*.

Defendant has failed to establish that the trial court erred by ordering defendant to pay restitution in the amount of $3,055. The Michigan Constitution, as well as the Crime Victim's Rights Act, affords restitution to crime victims. Const 1963, art 1, § 24; MCL 780.766. Restitution is awarded "to any victim of the defendant's course of conduct that gives rise to the conviction[.]" MCL 780.766(2). The purpose of restitution is "to allow crime victims to recoup losses suffered as a result of criminal conduct." *People v Grant*, 455 Mich 221, 230; 565 NW2d 389 (1997). MCL 780.767(1) instructs the trial court to "consider the amount of loss sustained by any victim as a result of the offense."

"The prosecution bears the burden of establishing the proper amount of restitution by a preponderance of the evidence." *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012). "The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim." *Id*., citing *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007). In determining the amount of the victim's loss, a trial court "is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *Grant*, 455 Mich at 233-234. Absent a dispute, the trial court is "not required to make express findings regarding the amount of restitution." *Id*. at 235.

The prosecution stated at defendant's sentencing hearing that "the [trial] court will see in the victim's impact statement the damages [incurred by Beri] were $3,055, and that [the amount of damages] was concurred with by the Probation Department." The PSIR indicated that contact was made with the victim's mother, Kelly Beri, and that she provided the victim's impact statement. Mrs. Beri reported that

> $1,655 in personal items were in the vehicle at the time of the carjacking. Additionally, she reports the vehicle sustained $1,400 in damages. Mrs. Beri stated that an itemized list of the items that were in the vehicle was forwarded to the Prosecutor's Office. She also provided documentation of the damages and repairs.

Trial counsel indicated that he and defendant had reviewed the PSIR and did not have any additions or corrections. The PSIR states that the damages were corroborated by an itemized list of personal belongings that were in the vehicle at the time of the carjacking and documentation of the damages and repairs that had been provided to the prosecutor's office.

The trial court was entitled to rely on the PSIR in ordering restitution. *Grant*, 455 Mich at 233-234. The PSIR is assumed accurate, absent any challenges to the information contained within. *Grant*, 455 Mich at 233-234. The trial court did not err by relying on the accuracy of the information regarding Beri's damages, and trial counsel raised no objection. *Id*. Accordingly, as no objection was raised, the trial court was not required to detail its findings regarding restitution on the record. *Id*. at 235. It was not error for the trial court order defendant to pay $3,055 in restitution.

Defendant also argues that the trial court "failed to consider the financial resources and earning ability of the defendant, the financial needs of the defendant and the defendant's dependents[,]" in awarding restitution in the amount of $3,055. The current version of MCL 780.767(1) only requires a trial court to consider the losses sustained by the victim, not the ability of the defendant to pay. This is distinct from the prior version of the statute, which enumerated factors for a sentencing court to consider regarding a defendant's financial situation. *People v Lueth*, 253 Mich App 670, 692; 660 NW2d 322 (2002). Nonetheless, the lower court record shows that the trial court was cognizant of defendant's financial circumstances. Defendant did not contest his ability to pay restitution at the time of sentencing. Similarly, on appeal, defendant does not provide any evidence that he would be unable to pay the $3,055. Thus, the trial court did not err by requiring defendant to pay restitution in the amount ordered.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly