*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 24, 2020

v

No. 346741
Wayne Circuit Court
LC No. 18-003200-01-FC

ROBERTO JANMANTA ST. CLAIR,

Defendant-Appellant.

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529, first-degree home invasion, MCL 750.110a(2), and conspiracy to commit first-degree home invasion, MCL 750.157a; MCL 750.110a(2). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 60 years' imprisonment for the robbery and related conspiracy convictions and 25 to 60 years' imprisonment for the home invasion and related conspiracy convictions. The trial court also ordered defendant to pay $1,300 in court costs and $2,000 in restitution. We affirm.

The following discussion is supported by testimony and other evidence presented at the trial. Defendant, Andrew French, Savanna Scott, Duroderick Nettles, and Phillip Davis plotted, planned, and conspired to commit a home invasion and robbery of a Detroit residence where, according to defendant, there was $20,000, heroin, and cocaine. Using Davis's home as a base and with Davis's remaining at his house, the conspirators took two vehicles to the targeted home at around 1:30 a.m. on November 25, 2017. Defendant drove Davis's car accompanied by Nettles, and Scott drove French's car accompanied by French. Nettles and French each carried a firearm. Defendant and Scott parked on a street near the targeted home, and Nettles and French proceeded to break into the house while defendant and Scott waited to provide the escape. Apparently, defendant had the wrong address, and the victim, an employee of the Wayne County Sheriff's Department, was sleeping in the residence when she was awakened by the sound of breaking glass from her front door. The victim grabbed a gun, looked into her living room, and saw a man standing there with a handgun. The victim, in fact, had both a shotgun and a handgun. A gun battle ensued resulting in French's death. The victim was not struck by gunfire, and Nettles retreated from the

-1-

home.[1]  When the shooting began, defendant drove away by himself, but Scott stayed in the area for a short time to find out what transpired.

Eventually, defendant, Scott, and Nettles ended up back at Davis's house.  All of the conspirators, except for the deceased French, were subsequently arrested and incarcerated.  Police review of cell phone records placed the conspirators, including defendant but not Davis, in the area of the home invasion and robbery around the time of the criminal activity.  These records also showed various communications between the conspirators, including defendant and Davis, before and after the break-in and shootout.  Defendant told the police that he had met Nettles in Davis's basement and that he took a ride with Nettles to the street where the crime occurred.  Defendant was convicted as indicated above.

On the third day of defendant's trial, after two days of jury selection, defendant orally requested that his trial counsel be replaced with a new attorney due to a breakdown in the attorney-client relationship.  When the trial court denied defendant's oral request for substitution of counsel, defendant filed a handwritten motion.  The trial court reviewed defendant's motion and denied the request for substitution of counsel.  The court noted that many of the allegations consisted of "wild conjecture and speculation."  Subsequently, on the date that defendant was scheduled for sentencing, his attorney requested to withdraw as defendant's counsel in light of a grievance that defendant had filed with the Attorney Grievance Commission (AGC).  The trial court granted the request to withdraw and appointed new counsel for sentencing.

On appeal, defendant first argues that the trial court abused its discretion when it denied his request for substitute counsel where there was a breakdown in the attorney-client relationship and a disagreement over trial strategy.  This Court reviews for an abuse of discretion a trial court's decision on a defendant's motion for the appointment of substitute counsel.  *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015).  In *McFall*, this Court recited the applicable principles regarding substitution of appointed counsel:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [*Id.* at 382-383 (citations and quotation marks omitted).]

---

[1] The victim only recalled seeing one of the intruders, French, who was shot dead.

Defendant has abandoned this argument by failing to engage in any legal analysis of the issues concerning "good cause" and whether a substitution of counsel would have unreasonably disrupted the judicial process. Defendant's "argument" is merely a recitation of the case's procedural history, devoid of any actual argument with respect to why the trial court abused its discretion when it denied his request for a new attorney. An appellant is not permitted to simply announce his position and then leave it to this Court to discover and rationalize the basis for his claims, nor may an appellant give only cursory treatment of an issue with little or no citation of supporting authority. *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007).

Even if defendant's argument is not deemed abandoned, it lacks merit. First, defendant requested the substitution of counsel on the third day of trial proceedings; therefore, any substitution would have unreasonably disrupted the judicial process. Defendant does not argue that there was some reason preventing him from making the request before or at the start of trial. Moreover, defendant's unspecified claim that there was a disagreement over certain issues does not constitute good cause. The record does not demonstrate any legitimate difference of opinion regarding a fundamental trial tactic, only a disagreement over discovery and counsel's failure to meet with defendant more often.

The fact that defendant filed a grievance with the AGC does not by itself demonstrate good cause for substitution. Defendant filed the grievance with the AGC on September 3, 2018, which was three weeks before trial.[2] And trial counsel was not notified about the grievance until after the trial was over. The lower court record does not contain a copy of the AGC complaint, and defendant fails to provide any details regarding the allegations in his grievance. Regardless, this Court has held that filing a grievance with the AGC, in and of itself, is insufficient to warrant substitution of counsel. See *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). Accordingly, the trial court did not abuse its discretion when it denied defendant's request for substitution of counsel.

Defendant next contends that the prosecution failed to present sufficient evidence to support the convictions of armed robbery and conspiracy to commit armed robbery because there was no evidence that defendant ever entered the home, confronted the victim, or intended to use violence. He maintains that his objective in engaging in the conspiracy "was just to steal the money and drugs, not to use violence in committing the larceny."

This Court reviews de novo the issue regarding whether there was sufficient evidence to support a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens

---

[2] The fact that defendant had filed the grievance weeks before trial but allowed two days of trial proceedings to pass before raising the issue of substitution is a further reason to reject defendant's argument, considering that any disruption would have been patently unreasonable.

to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The offense of armed robbery requires, pertinent to the circumstances in this case, proof of violence *or* force, along with the use of a dangerous weapon. MCL 750.529; MCL 750.530; *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018). Defendant was prosecuted for armed robbery under an aiding and abetting theory. "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39. In *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006), our Supreme Court recited the elements of aiding and abetting:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [Quotation marks, citation, and alteration omitted.]

"The aiding and abetting statute does not create a distinct crime; rather, it allows an aider and abetter to be convicted of, for example, armed robbery, even though that person did not hold the gun or take the money." *People v Greaux*, 461 Mich 339, 344-345; 604 NW2d 327 (2000).

Here, because the prosecution pursued the charge of aiding and abetting a robbery, the fact that defendant did not enter the victim's home or personally confront her did not undermine the armed robbery verdict. There was evidence that defendant identified or selected the home to be robbed, participated in the planning of the robbery, drove Nettles to the crime scene, and then waited in the car in anticipation of aiding Nettles with his getaway. There was also evidence that defendant knew that French and Nettles possessed firearms and brought those weapons to the victim's home for use in carrying out the robbery. Thus, when viewed in a light most favorable to the prosecution, the evidence and reasonable inferences arising therefrom established that defendant performed acts that assisted in the commission of the armed robbery and that he had knowledge that French and Nettles intended to commit armed robbery when the aid was given.

With respect to defendant's assertions that he did not intend or plan for the use of violence and did not know that French and Nettles would become violent, we first note that the use of violence was not even required to establish armed robbery. MCL 750.529; MCL 750.530. Rather, the use of force suffices. *Id.* Regardless, there was evidence that defendant and his accomplices believed that a woman and her child might be in the targeted home, that the conspirators agreed that French and Nettles should tie up any occupants, and that, as known by all, French and Nettles

-4-

were armed with guns and entered the house with the weapons. A reasonable inference arising from this evidence is that defendant, when providing aid and assistance, knew and was fully aware that violence and force could very well be used to accomplish the robbery. "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, *or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet.*" *Robinson*, 475 Mich at 15 (emphasis added). In light of the evidence, a reasonable juror could conclude that defendant had the requisite knowledge relative to force or violence *and* that the natural and probable consequences of an invasion of an occupied home by armed persons would be the use of force and violence. The evidence, therefore, was sufficient to support the armed robbery conviction based on an aiding and abetting theory. And the evidence just discussed, along with the evidence that all five participants worked in tandem pursuant to a plan to break into the home and commit robbery while armed, more than adequately supported the conviction of conspiracy to commit armed robbery.

Defendant next argues that, although his sentences for armed robbery and conspiracy to commit armed robbery fell within the minimum sentence guidelines range, the sentences are unreasonable and violate the principle of proportionality. This Court's review of a guidelines sentence is restricted by MCL 769.34(10), which provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." As this Court observed in *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), the decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), "did not alter or diminish MCL 769.34(10)." Therefore, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196. Defendant does not allege a scoring error, nor does he assert that he was sentenced on the basis of inaccurate information. Because defendant was sentenced within the guidelines range and he does not claim that the trial court relied on inaccurate information or erred in scoring the guidelines, his sentence would not ordinarily be subject to appellate review.[3]

We do note, however, that MCL 769.34(10) cannot insulate the state from appellate review of a claim that a sentence is unconstitutional, e.g., an argument that a sentence constitutes cruel or unusual punishment. See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (MCL 769.34[10]'s limitation on review does not apply to claims of constitutional error); see also *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006) ("It is axiomatic that a statutory provision, such as MCL 769.34[10], cannot authorize action in violation of the federal or state constitutions.").

---

[3] "[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018).

To the extent that defendant is arguing that his minimum sentence is not proportionate for purposes of cruel-or-unusual-punishment analysis, we first note that a sentence falling within the guidelines is presumptively proportionate, "and a sentence that is proportionate is not cruel or unusual punishment." *Powell*, 278 Mich App at 323. A defendant can only overcome the presumption by presenting evidence of unusual circumstances that would render a presumptively proportionate sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

Defendant essentially argues that he had minimum culpability because he did not enter the home and engage in the shooting and violence. We conclude that this argument does not constitute "unusual circumstances" and that defendant fails to overcome the presumption of proportionality. See *People v Davis*, 250 Mich App 357, 369-370; 649 NW2d 94 (2002) (strong family background, prior work history, no prior drug offenses, and remorse did not overcome presumption); *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995) (young age, lack of criminal record, and ill-devised crime did not constitute unusual circumstances); *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (employment, absence of criminal history, and minimum culpability were not unusual circumstances that overcame the presumption). Resentencing is unwarranted.[4]

Finally, defendant challenges the imposition of $1,300 in court costs and $2,000 in restitution. Defendant argues that the court costs were unrelated to the circumstances of the case and that the trial court failed to articulate a factual basis for setting the amount at $1,300. And defendant also contends that there was nothing in the record supporting the determination that the victim incurred $2,000 in losses or damages. Defendant did not object to the trial court's assessment of court costs and restitution.

With respect to the court costs, the presentence investigation report (PSIR) included a recommendation that defendant pay $1,300 in costs. At the sentencing hearing, defense counsel indicated that he had no modifications, deletions, or additions for the PSIR. Therefore, we conclude that defendant effectively waived any challenge of the court costs imposed by the trial court as adopted from the PSIR. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

With respect to the restitution order, at the sentencing hearing, the prosecutor stated that the victim had wished to speak but had an appointment, and the court noted that the victim had shown up and spoken at all of the sentencings of defendant's accomplices. The prosecutor then stated, in relevant part:

> I'd also ask, there's restitution in this matter, for $2,000.00 because when they kicked in her door and started firing bullets everywhere, her house that was nice that she took care and worked hard for, has bullets ripped all through the hardwood, dug out through the drywalls, ripped apart all of her living room or bedroom. That should be assessed as well.

---

[4] We note that defendant had previously served 20 years in prison for second-degree murder.

Defendant did not voice any objection to the request. At trial, the victim testified that the glass in her front door was shattered. An officer testified that there were bullet holes in pillows, a comforter, a door, and a wall. The prosecution also admitted photographs of the damage at trial.

"Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney." MCL 780.767(4). "Only an actual dispute, *properly raised at the sentencing hearing in respect to the type or amount of restitution*, triggers the need to resolve the dispute by a preponderance of the evidence." *People v Grant*, 455 Mich 221, 235; 565 NW2d 389 (1997) (emphasis added). Here, defendant failed to create a dispute, and we are reluctant to remand the matter to the court for something that could and should have been addressed at sentencing. Moreover, under plain-error analysis, we conclude that defendant has not demonstrated an obvious error or prejudice. See *People v Foster*, 319 Mich App 365, 374; 901 NW2d 127 (2017). A few weeks before defendant's sentencing hearing, the same judge who sentenced defendant sentenced Nettles after a plea. And at Nettles's sentencing hearing, the court stated that the prosecutor had presented invoices and contracts procured by the victim "indicating $875.00 and $1,125.00 for work done on her residence for a total of $2,000."[5] No error occurred, so no remand is warranted.

We affirm.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

[5] Nettles's application for leave to appeal was denied by this Court. *People v Nettles*, unpublished order of the Court of Appeals, entered March 22, 2019 (Docket No. 347462).