# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 30, 2014

Plaintiff-Appellee,

v

No. 317855
Wayne Circuit Court
LC No. 12-011495-FH

RENEE LEE BULLOCK,

Defendant-Appellant.

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of one count of obtaining or using the money or property of a vulnerable adult through fraud, deceit, misrepresentation, coercion or unjust enrichment in an amount valued at $1,000 or more but less than $20,000, in violation of MCL 750.174a(4)(a). The vulnerable adult in the matter is Ronald Bullock (hereafter "Ronald"), defendant's father. Defendant was placed on probation for a term of five years and ordered to pay $65,000 in restitution. We affirm defendant's conviction, but remand the case to the trial court for a hearing on restitution.

Defendant raises four issues on appeal. First, defendant contends that she was denied due process when she was tried for a charge she was not, in fact, bound over on after preliminary examination. We disagree.

This Court reviews "unpreserved constitutional error for plain error affecting a defendant's substantial rights. In order to avoid forfeiture under a plain-error analysis, defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011) (footnotes omitted). Furthermore, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (citations omitted, alterations in original).

The criminal complaint in defendant's case was issued on November 26, 2012, charging defendant with "EMBEZZLEMENT – PERSON IN RELATIONSHIP OF TRUST WITH VULNERABLE ADULT – $20,000 OR MORE, contrary to MCL 750.174a(5)(a)." At the conclusion of defendant's December 6, 2012, preliminary examination, the magistrate found that there was no evidence that defendant committed "the felony of embezzlement over $20,000."

-1-

The magistrate did find, however, that there was "at a minimum, a fact question regarding an amount between $1,000 and less than $20,000, so I'll bind over on the reduced charge of MCL 750.1744(sic)(a)." Because MCL 750.1744(a) does not exist, and the people had moved to bind defendant over on a charge of embezzlement from a vulnerable adult, it is clear that the transcriptionist erred or the magistrate misspoke when referencing such a statute.

To complicate matters further, the bindover document issued after the magistrate's decision to bind defendant over, provided that defendant was bound over on the amended charge of MCL 750.174(4)(a). That statute prohibits embezzlement by an agent, servant, or employee of another person, but does not involve a vulnerable adult. Again, however, it is clear from the magistrate's words that it intended to bind defendant over on a "reduced charge"—reduced from the charge of embezzlement of over $20,000 from a vulnerable adult. On December 13, 2012, the prosecution submitted a new information, charging defendant with embezzlement from a vulnerable adult in an amount of $1,000 or more but less than $20,000 in violation of MCL 750.174a(4)(a). At trial, it was clear that defendant was charged under MCL 750.174a(4)(a), and when the trial court instructed the jury at the conclusion of the trial, the judge explained that defendant is charged with one count of "vulnerable adult prohibited contact." The trial court then summarized all of the elements of MCL 750.174a(4)(a).

Defendant contends that she was denied her right to a fair trial because the complaint and information are fatally defective and cannot confer jurisdiction to the court. Defendant's argument is entirely unfounded. This Court has held that "[t]he circuit court gains jurisdiction over a defendant charged with a criminal offense triable in circuit court upon the filing of a return by the examining magistrate showing that . . . a preliminary examination was had and the defendant was properly bound over for trial." *People v Farmilo*, 137 Mich App 378, 380; 358 NW2d 350 (1984). A correct information was ultimately filed in this case. Thus, defendant's argument on appeal is meritless.

Defendant next contends that she was denied effective assistance of counsel from her two attorneys, David Dunn, who represented defendant during the preliminary examination, and Terry Price, who represented her at trial. We disagree.

Defendant never moved for a *Ginther*[1] hearing or a new trial. "Thus, review is limited to the existing record." *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000); *People v Burton*, 219 Mich App 278, 292; 556 NW2d 201 (1996).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008), quoting *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.* "This Court reviews for clear error a trial court's factual findings, while we review de novo constitutional determinations." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Furthermore, "whether . . . counsel's performance was deficient is measured against an objective standard of reasonableness." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Thus, to prevail, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 US at 688, and he must show that he was prejudiced by counsel's performance, which can be shown by proving that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. This Court "will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [this Court] use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). The defendant "bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600.

DUNN'S PERFORMANCE

Defendant contends that Dunn was ineffective for failing to object to the trial court's misstatement of the offense that defendant was bound over for trial on and that Dunn was ineffective for representing defendant because of a conflict of interest. Each will be addressed in turn.

It is true that Dunn did not move to quash the information reflecting the wrong charge. However, as discussed in this Court's analysis of defendant's first issue, any objection or motion to quash the information would have been futile because a correct information was in fact filed. Additionally, "[i]t is well established that defense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008). Thus, Dunn's performance was objectively reasonable.

Defendant also contends that Dunn was ineffective because he represented defendant despite a conflict of interest. Dunn represented defendant and Ronald in the probate court during the conservatorship proceedings. To demonstrate a conflict of interest a defendant "must establish that an actual conflict of interest adversely affected his lawyer's performance." *People v Smith*, 456 Mich 543, 556-557; 581 NW2d 654 (1998), quoting *Cuyler v Sullivan*, 446 US 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980). MRPC 1.9 "prohibits an attorney from 'switching sides' by representing a new client in a matter if the attorney's former client has an interest adverse to the new client." *People v Davenport*, 280 Mich App 464, 468; 760 NW2d 743 (2008). Furthermore, MRPC 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

Dunn represented Ronald and defendant in the probate court. Dunn also represented defendant during her preliminary examination. On March 1, 2013, Price entered his appearance on defendant's behalf. Dunn's representation of Ronald, the victim in defendant's criminal case,

-3-

created a conflict of interest because Ronald's interests were adverse to defendant's interests. MRPC 1.9. However, defendant cannot prove that she was prejudiced by this conflict because Dunn only represented defendant during the preliminary examination stage of the proceedings. During Dunn's representation, Dunn successfully argued for reduced charges. Thus, defendant cannot prove that she was prejudiced by Dunn's representation.

PRICE'S PERFORMANCE

Defendant contends that Price was ineffective for failing to notice that the magistrate bound defendant over on incorrect charges and for failing to adequately investigate her case. For all of the reasons discussed with regard to Dunn, Price was not ineffective for failing to make a motion to quash the information or to bring a futile motion with regard to the trial court's jurisdiction over defendant's case based upon incorrect charges.

Most of defendant's argument with regard to Price's performance focuses on Price's closing argument. In particular, defendant contends that Price confused the elements of MCL 750.1744(a) with MCL 750.174a(4)(a). Defendant does not analyze this argument in a logical manner, and it is hard to discern what, in fact, she is arguing. First, defendant improperly cites the two statutes in question. What she really means is Price confused the elements of MCL 750.174(4)(a) – not MCL 750.1744a – with MCL 750.174a(4)(a) during Price's closing argument. During the section of Price's closing argument cited by defendant on appeal, Price argued that there was no proof that defendant was, in fact, a vulnerable adult pursuant to MCL 750.174a. Defendant's argument that Price incorrectly focused on the wrong statute is unfounded because MCL 750.174a requires proof that defendant, through fraud, deceit, misrepresentation, coercion, or unjust enrichment used a vulnerable adult's money or property. A "vulnerable adult" is "[a]n individual . . . who, because of age, developmental disability, mental illness, or physical disability requires supervision or personal care or lacks the personal and social skills required to live independently." MCL 750.145m(u)(*i*). In Price's closing argument, Price argued that the prosecution offered no proof that Ronald was a vulnerable adult; thus, the prosecution could not prove its case. Defendant's contention that Price was ineffective for arguing the wrong statutory requirements is baseless.

In her third issue on appeal defendant contends that the trial court should have held a restitution hearing. We agree.

"[T]his Court reviews the findings underlying a trial court's restitution order for clear error." *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2011); MCR 2.613(C). "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *Allen*, 295 Mich App at 281. Additionally, this Court generally reviews a trial court's order of restitution for an abuse of discretion. *People v Bell*, 276 Mich App 342, 345; 741 NW2d 57 (2007).

At sentencing, the prosecution initially contended that defendant should be ordered to pay $128,960.90 in restitution. However, defendant disagreed: "When we go through, when we went through this number is not correct because the prosecution has . . . added into this alleged debt to a nursing home." Defendant further contended that she was not liable for those fees. As a result, defendant requested a restitution hearing "where these figures can be put before the

Court in a way that we can add them up to see what they come to, and see which part of them may be disqualified."

However, the trial court denied defendant's request for a hearing, and ordered defendant pay restitution in the amount of $65,000. The trial court explained:

> That's based upon - - to me there was a time period when Ms. Bullock was ordered not to spend anymore money. She went right out the next day and did. So I'm basing it on that.

Following the trial court's decision, defense counsel stated that defendant only received a check for $30,000. The trial court immediately responded: "I could have just as easily ordered 128. If you keep talking, that's what I'm gonna order and just let you take it up to the Court of Appeals."

In determining the amount of restitution to order, a trial court "shall consider the amount of the loss sustained by any victim as a result of the offense." MCL 780.767(1). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." MCL 780.767(4). "The first inquiry requires consideration regarding the amount of the victim's loss." *People v Grant*, 455 Mich 221, 233; 565 NW2d 389 (1997). "A judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *Id.*

The presentence investigation report (PSIR) provided that restitution should have been set at $128,960.90 based on the fact that "[t]here was only on[e] Charter One [Bank] checking account. This is the account from which [defendant] spent $128,960.00 of Ronald Bullock[']s funds for her personal use." However, at sentencing, the court, with almost no explanation, ordered defendant to pay only $65,000 in restitution. On appeal the prosecution explains a calculation that it believes the trial court relied on to reach $65,000. This Court has held that it is "incumbent on the defendant to make a proper objection and request an evidentiary hearing . . . to determine the proper amount of restitution due." *People v Bowling*, 299 Mich App 552, 564; 830 NW2d 800 (2013). Because defendant did request such a hearing, because the amount of restitution outlined in the PSIR was dramatically different from that ordered, and because the trial court did not explain how it reached $65,000, this matter is remanded to the trial court to explain the reason for the restitution amount.[2]

In her last issue on appeal, defendant contends that the trial court improperly admitted similar acts evidence. We disagree.

---

[2] Although it has been brought to this Court's attention that defendant has been discharged from probation, we still believe the issue of restitution requires remand. Not only does a crime victim have a constitutional right to restitution, Const. 1963, art. 1, § 24, the Crime Victim Rights Act specifically provides, at MCL 780.766(13) that, "An order of restitution entered under this section remains effective until it is satisfied in full . . . ."

Generally, this Court reviews the trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). This Court reviews de novo preliminary questions of law related to the admission or exclusion of evidence. *Id.* A trial court abuses its discretion when the result is outside the range of principled outcomes. *Id*.

MRE 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And pursuant to MRE 402, all relevant evidence is generally admissible. MRE 404(b) provides that evidence of other crimes, wrongs, or acts is:

> not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

However, MRE 403 states that although it is relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. See, e.g., *Duenaz*, 306 Mich App at 90.

In this case, defendant was charged with violating MCL 750.174a(1), which provides:

> A person shall not through fraud, deceit, misrepresentation, coercion, or unjust enrichment obtain or use or attempt to obtain or use a vulnerable adult's money or property to directly or indirectly benefit that person knowing or having reason to know the vulnerable adult is a vulnerable adult.

Additionally, subsection(4)(a) provides:

> (4) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $10,000.00 or 3 times the value of the money or property used or obtained or attempted to be used or obtained, whichever is greater, or both imprisonment and a fine:

> (a) The money or property used or obtained, or attempted to be used or obtained, has a value of $1,000.00 or more but less than $20,000.00.

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "General similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id.* at 64. In *Sabin*, the Supreme Court found that even where situations are "dissimilar in many respects" similar acts evidence can still be admissible. *Id.* at 67.

-6-

Defendant challenges the admission of Maureen Deel's testimony concerning payments of defendant's DTE bill out of Deel's bank account as simply negative character evidence. Defendant challenges Alexander Roe of DTE (confirming the DTE payments were made by internet or automatic withdrawal pre-approval) and Officer Alisa Brown's testimony (that the DTE account was closed and sent to collections) as bolstering Deel's testimony. Deel testified that defendant used Deel's checking account, without her permission, to set up automatic payments for DTE. Throughout trial, the prosecution set out to prove that defendant obtained Ronald's money without his permission. In defendant's case with Ronald, defendant was accused of using Ronald's money for her personal benefit. With regard to Deel, the prosecution contended that defendant had access to Deel's checking account because Deel had previously written defendant checks, which defendant kept. These instances are not exactly the same, but they are similar. In both circumstances, defendant gained access to checking accounts that were not her own and used the accounts for her own personal gain. Furthermore, in both circumstances, defendant contended that she had permission to access the accounts; however, no other evidence was ever introduced to substantiate defendant's defense. Thus, we conclude that these instances were similar enough to constitute similar acts admissible for a proper purpose under the rules of evidence. Additionally, Roe's and Brown's testimony substantiates the details of defendant's similar scheme; thus, their testimony was also appropriately admitted.

Moreover, the trial court instructed the jury:

You have heard evidence that was introduced to show that the defendant committed another improper act for which she is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence continued to show that defendant used a plan or system or some type of scheme that she has used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person or that she is likely to commit crimes. You must not convict the defendant here because you think she is guilty of other bad conduct.

Therefore, any prejudicial effect the evidence had was minimized by the trial court's limiting jury instruction. *People v Crawford*, 458 Mich 376, 399 n 16; 582 NW2d 785 (1998) ("[A trial court's] limiting instruction will often suffice to enable the jury to compartmentalize evidence and consider it only for its proper purpose[.]").

Affirmed and remanded for a hearing on restitution. This Court does not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael J. Talbot
/s/ Deborah A. Servitto

-7-