*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVIE GOLDEN,

        Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 353535
Wayne Circuit Court
LC No. 18-008894-01-FC

ON REMAND

Before: BOONSTRA, P.J., and RICK and SWARTZLE, JJ.[1]

PER CURIAM.

This matter returns to this Court on remand from our Supreme Court "for reconsideration in light of [*People v*] *Posey* [*(Posey II)*, 512 Mich 317; ___ NW2d ___ (2023)]." *People v Golden*, 997 NW2d 176 (Mich, 2023). Having considered the change in law set forth in *Posey II*, we again affirm.

## I. FACTUAL BACKGROUND

In a prior opinion, this Court set forth the facts of the case as follows:

> This case arises out of a shooting on October 9, 2018, at a coney island in Detroit, Michigan. Defendant and the victim, Kevin Riggs, knew each other prior to the day of the shooting. Debra Boyd testified that, on the day of the shooting, she had seen defendant and Riggs have an altercation, during which Riggs demanded money from defendant. Eventually Riggs drove off in his truck, while defendant and Boyd walked to the store. While walking, they parted ways so that Boyd could go to the store to get change because she owed defendant $50.

---

[1] Judge Swartzle has been designated to serve in the stead of former Judge David H. Sawyer, who sat on the panel that heard this case on direct appeal.

Defendant continued to walk to the coney island. Before reaching the coney island, defendant stopped at a house on the way to get a firearm from "associates." He claimed he was apprehensive and did not know what Riggs would do because Riggs was "super high."

When defendant arrived at the coney island, Riggs was in the parking lot. Defendant went into the coney island. He proceeded to pace the inside of the restaurant, checking the front door for Riggs. When Boyd started to approach the coney island, defendant walked outside with a gun in his hand, covered by a bandana. Riggs approached defendant and Boyd. Boyd handed defendant the money she owed him and started to walk off. Within moments, Riggs punched defendant in the face. Riggs fell to the ground, while defendant remained standing. As Riggs stood up, defendant fatally shot Riggs in the chest. Defendant walked away from the scene and was arrested at a later time. [*People v Golden*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 2021 (Docket No. 353535).]

Defendant was convicted of second-degree murder, MCL 750.317, carrying a concealed weapon, MCL 750.227, felon in possession of a firearm (felon-in-possession), MCL 750.224f, felon in possession of ammunition, MCL 750.224f(3), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. At sentencing, the trial court stated:

I had an opportunity to watch the tape of what occurred with regard to this incident and well first of all, I would like to put down that your statement there you show absolutely no remorse for your act. And I think the jury got this verdict exactly right, and I didn't see any self-defense in this case whatsoever. What I saw is you tracked this man down and shoot him and kill him for no reason whatsoever[.]

What I, also, see reviewing your Presentence Report is a man that has thirteen felony convictions, has been in and out of jail and prison repeatedly throughout his life, has twelve misdemeanors. Shows absolutely zero remorse. And took a gun for no reason whatsoever and shot and killed Kevin. Shot him in the chest and shot him down for no reason. There was no reason this had to happen. And what you did is you took away three children's father, you took away an uncle, brother. You took away his, the mother's children from him (sic). You took away a grandfather and you've, you've ruined this family, and I think you've ruined your family, too. And it's just, it's just the selfishness that I see in your life the entire when I read your life story it says to me that Stevie Golden cares about one person and one person only, and that's Stevie Golden. And this, this book is full of that.

Notably, the trial court's discussion of its sentencing rationale came directly after defendant used his right of allocution to explain that he shot Riggs in self-defense. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 60 to 95 years' imprisonment for the second-degree murder conviction, 60 to 95 years' imprisonment for the carrying a concealed weapon conviction, 60 to 95 years' imprisonment for the felon-in-possession conviction, 60 to 95 years'

imprisonment for the felon in possession of ammunition conviction, and two years' imprisonment for both felony-firearm convictions.

This Court affirmed defendant's convictions and sentences on direct appeal. *Golden*, unpub op at 1. Our Supreme Court held the case in abeyance pending the outcome in *Posey II*. *People v Golden*, 969 NW2d 44 (Mich, 2022). Thereafter, this Court issued *Posey II*, which overruled this Court's opinion in *People v Posey (Posey I)*, 334 Mich App 338; 964 NW2d 862 (2020). It subsequently remanded this case for reconsideration in light of *Posey II*. *People v Golden*, 997 NW2d 176 (Mich, 2023).

## II. ANALYSIS

On remand, defendant argues that under *Posey II*, his sentence for second-degree murder is disproportionate and unreasonable, and that he is entitled to resentencing. We disagree.

In *Posey II*, 512 Mich at 349, our Supreme Court overruled the portion of *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), and MCL 769.34(10), requiring appellate courts to affirm within-guidelines sentences. The Court found that the portion of MCL 769.34(10) requiring an appellate court to automatically affirm a within-guidelines sentence violates a defendant's Sixth Amendment rights because doing so "would necessarily render the guidelines mandatory." *Id*. at 352. Thus, this Court now reviews a defendant's within-guidelines sentence as it would a departure sentence. We "review[] the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). Under *Posey II*, 512 Mich at 359, "within-guidelines sentences are to be reviewed for reasonableness . . . applying a presumption of proportionality . . . through which the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate[.]"

In *People v Posey (Posey III)*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 345491), this Court set forth the general principles applicable to the review of sentences as follows:

> In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), the Michigan Supreme Court observed:
>
> > [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."
>
> > "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the

sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263, 666 NW2d 231 (2003). [*Posey III*, slip op at 2-3.]

Defendant contends that his sentence of 60 to 95 years' imprisonment for second-degree murder was disproportionate because the trial court failed to consider a number of mitigating factors. Defendant points out that the court did not consider that defendant was 52 years old when he was sentenced and that he is in poor mental and physical health. He further contends that the court disregarded his claim that he acted in self-defense by killing Riggs. Additionally, defendant claims that the trial court placed too much emphasis on his criminal record, which is rife with property and drug offenses, and erroneously sentenced him based on its perception that he is a selfish man. Defendant states that he committed those crimes because he has a substance use disorder and needed money for drugs. Substance use disorders, says defendant, fall under the umbrella of mental illness per the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed).

Defendant faults the court for not considering these mitigating factors on the record, but overlooks that "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019), citing *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011). Thus, the court was not required to expressly address defendant's poor health or substance use issues on the record at sentencing. However, it bears noting that the trial court was provided with a copy of defendant's presentence investigation report (PSIR), which stated:

> [Defendant] has a long history of heroin, cocaine, marijuana, and alcohol abuse. He described himself previously as a heroin addict versus a cocaine abuser. The defendant has been in treatment on several occasions, most recently at the Mariners Inn. The defendant's health is failing. In addition to kidney failure, he has cardiac problems, hypertension, and back pain which interferes with strenuous activity. The defendant's mental health is poor as well. He has been diagnosed with Bipolar Disorder as well as Clinical Depression. When previously questioned about mental health counseling, he stated, "I kind of been in treatment." The defendant has been in hospitalized [sic] three times since the arrest[.]

The trial court was clearly aware of the contents of defendant's PSIR at sentencing. Consequently, defendant cannot establish that the court failed to consider his physical and mental ailments during sentencing. See *Bailey*, 330 Mich App at 64.

Additionally, a review of the trial court's reasoning shows that rather than focusing on defendant's perceived selfishness, the court believed a 60-year minimum sentence was warranted based on defendant's lengthy criminal history and apparent lack of remorse for killing Riggs. Although a trial court may not base its sentence "even in part on a defendant's refusal to admit guilt[,]" it *may* consider a defendant's lack of remorse, which implicates the defendant's potential

for rehabilitation. *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). Moreover, trial courts "are entitled to rely on the information in the presentence report," when sentencing a defendant, *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997), including information regarding the defendant's criminal history. See *Babcock*, 469 Mich at 264 (stating that "the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history."). Defendant presents no argument as to why the trial court was not permitted to consider these factors, other than the contention that mitigating factors should have compelled the court to impose a lesser sentence.

Ultimately, defendant has not demonstrated that his sentence for second-degree murder was unreasonable or disproportionate. As the trial court correctly noted, defendant shot Riggs in cold blood after initiating an altercation with him by punching him in the face. The jury did not find his self-defense argument persuasive, and neither did the trial court. With regard to sentencing, the trial court was free to disbelieve defendant's expression of remorse, as well as his assertion that he killed Riggs in self-defense. We defer to the trial court's judgment on such matters. See *People v Ziegler*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 355697) ("We defer to the trial court's assessment of witnesses' credibilities, to the extent such assessments are relevant, even when the applicable standard of review is otherwise de novo."). On this record, we conclude that the sentence imposed was adequately proportionate to the seriousness of the circumstances surrounding the offense and offender. *Posey III*, slip op at 2. Defendant is therefore not entitled to resentencing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michelle M. Rick
/s/ Brock A. Swartzle